The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, we will begin argument this morning in Williams v. Morgan State. Mr. Kenney, whenever you're ready, we'd be pleased to hear from you. Thank you, Your Honors. May it please the Court. This case stems from a appellant working as the broadcast station manager for Morgan State University. Morgan State University is an arm of the state of Maryland. While working there, she engaged in various whistleblower activities, among them claiming that the university was favoring one of the mayoral candidates in the 2016 Baltimore mayoral election. She also made claims that the university was misappropriating funds pursuant to its FCC license and misrepresenting the use of those funds. Ms. Williams brought a circuit court complaint in the Baltimore City Circuit Court against the university. In that complaint, she alleged various claims. The claims at issue before the Court today were under the National Defense Authorization Act, section 473. Well, but we're dancing around. The question is whether the state has ever waived its sovereign immunity here. And we're told that in innumerable decisions that waivers of sovereign immunity should be strictly construed. And this goes right to the heart of the state's sovereign immunity, which is the protection of its own treasury. That's correct, Your Honor. What makes you think that there's some kind of waiver here? Well, Your Honor, the cases construing that state sovereign immunity is subject to stringent standards, generally speaking, revolve around the issue of whether the state has consented to suit in federal court under the 11th Amendment. There's not many cases construing whether or not the state's own legislature has consented to suit in their own state for federal causes of action. And we contend that the Maryland Court Claims Act, section 1204. Why should we as a federal court go charging in to Maryland law and say that Maryland has waived its sovereign immunity? I mean, Congress can abrogate the state's sovereign immunity and the Maryland legislature can abrogate it and the Maryland Court of Appeals can abrogate it. But the federal court ought to be the last one charging in and saying to the state that you've waived your own sovereign immunity. I mean, it just gives you the feeling that you want us to go where we don't belong. Well, Your Honor, the reason why this court is going there is because the state of Maryland removed this case from circuit court to federal court. Now that it's in federal court, this gentleman... Well, we have stated that removal, our president has indicated that removal is not tantamount to a waiver. That's correct, Your Honor. But in that situation, in Lapidus, the court didn't just say, well, we are going to defer to Maryland regarding its own actions, whether it believes its own actions are a waiver. We are now in federal court. This is arising in the context of the constitutional structure, and it is a federal issue. As recently... Judge Diaz, can you hear me? Yes, Your Honor. Okay, sorry. So I think you can gauge from Judge Wilkinson's questions that he has a hesitancy in wading into this area. And I have to say, I did, too, when I first read this appeal, I was wondering, you know, why we should decide this question seems like a fairly weighty question of the state's abrogation of sovereign immunity. And I'm wondering whether anybody at any point considered the alternative that is certifying this question to the Maryland Court of Appeals. Well, the appellant hasn't requested that. The court, under the Maryland Certification Uniform Law, could on its own request that. I know we can. I'm asking you whether, why you all didn't do that. Why you didn't suggest that to the district court. Why apparently no one has suggested that to our court. I can't speak for the state of Maryland or why it does not want the state of Maryland. Do you have any objection to that? I have no objection to that, Your Honor. I do believe that this is a Maryland issue. But I do believe that this has characteristics of federal law. This court in Lee-Thomas v. Prince George's County alluded to the fact that when you have an issue of state sovereignty in federal court. But the problem is that by its terms, the Maryland statute waives sovereign immunity only as to tort actions. And this is a statutory cause of action. And it's a federal cause of action. And the state sovereign immunity. Why should we extend a waiver of sovereign immunity, of Maryland sovereign immunity, to a cause of action that is not recognized under Maryland law? I haven't heard that. With all due respect, Your Honor, our position is that this type of statutory employment claim is a tort action under Maryland law. In Waterhouse v. Hawkins, Justice O'Connor. It's a cause of action under the National Defense Authorization Act. Your Honor, our position is that Maryland courts, in evaluating the Maryland Court of Claims Act, have routinely characterized the phrase tort to be as broad as, quote, all civil wrongs. In at least two separate opinions by the Maryland Court of Appeals, they quote Black's Law Dictionary, citing the term tort as defined by Blacks encompasses all civil wrongs, not just wrongs. Which opinions are you talking about? This is Spina v. Jackson, 442, Maryland 311, 2015. And it was also cited in Green v. NBS, 976A. But those waivers were of state constitutional claims, not of federal claims. That's what those cases dealt with. And they were all recognized. They were all under state law. They were either state constitutional claims or intentional torts under state law. You're asking us to waive state sovereign immunity for a federal cause of action not even recognized under Maryland law. Why shouldn't we just let the Maryland courts be taking that step, not us? Well, Your Honor, I have two responses. The first is that in the Green case, what the court did was it applied the word tort to a Maryland statutory claim. And our position is that there's no essential difference in the understanding of the word tort between a statutory state claim and a statutory federal claim. What does that mean, a statutory tort? Well, the way they have defined it is the word tort is a broad encompassing civil wrong. And what Maryland has done in several of these cases is say to litigants, when you bring a statutory claim, you must follow the procedures of the Maryland Tort Claims Act, essentially fitting in the statutory claim into the wording of a tort. And that's how Maryland courts of appeals have drawn these cases in. And our position is simply, well, if Maryland courts of appeals have opened up their courts to a limited sovereign immunity waiver, up to $400,000, under certain conditions, with certain notice procedures, under the federal system with the supremacy clause, and that the laws of the United States are the supreme laws, there's no reason why Maryland courts would not fit those federal statutory claims into the same footing. And that's the impact of the Stern case, which is the Maryland Court of Appeals case, which basically said that it should construe the dilution of governmental immunity. Judge Wynn, could you speak up a little bit? Judge Wynn, could you speak up a little? I want to make sure I hear you. I'm sorry, I realize you're a bit of a distance away. I was asking him to refer particularly to the Stern case, a case in which the Maryland Court of Appeals stated that it would construe legislative dilution of governmental immunity narrowly in order to avoid weakening the doctrine of sovereign immunity. The question really is, does this 11th Amendment have any implications here? Well, Your Honor, the state sovereign immunity is a creature of both the Constitution, the 11th Amendment, and its own status as a sovereign. To Your Honor's exact point regarding that decision, there is a provision in Maryland's waiver statute. It's at section 12, and it says this. This subtitle shall be construed broadly to ensure that injured parties have a remedy. So to the extent that this is asking judicial encroachment on Maryland's waiver of sovereign immunity, Maryland kind of stated this by their legislature that they want this immunity waiver to be construed broadly. And we don't think it's overbroad to say when you have your courts open to a statutory claim against the state. Well, there's a difference between construing something broadly and just rewriting a statute completely to open the waivers of sovereign immunity for federal causes of action. And to me, there's a principle of federalism in the relationship between state and federal courts that's in danger of being violated here quite fundamentally by us holding a waiver. As I mentioned earlier, we're the very last ones that ought to be doing that. We're the last ones. I suppose, Your Honor, if that's a primary concern, then the certification process to the Maryland Court of Appeals would be the proper avenue to show deference to sovereign immunity in the state of Maryland. Well, but did you ask for certification at the district court level? We did not, Your Honor, but neither did the state of Maryland. Did you ask for certification in your brief? No, Your Honor. But if the state of Maryland itself did not view this issue as sufficiently important to have its own Court of Appeals decide the matter. So is the deal that you wait to catch the drift of comments from the court and decide you'd be better off certifying? No, Your Honor. In other words, if these cases are to be certified, they ought to be certified sooner rather than later. And you ought to be making a motion for certification at an earlier point in time. Your Honor, that's a fair point. But we've been approaching this case from the posture that the state has decided it wants a federal court to resolve this issue. The state removed this case to federal court. So if we were to then go against what the state of Maryland is saying in this case, which is certify the Maryland Court of Appeals, that seems a little in a positive what the state is actually asking here today. But Judge Wilkerson makes a good point. These cases come to us in all different ways. And we're all over the world, all over the board of it. Quite frankly, during my time here, I rarely see where sometimes the parties don't even think about it. We're the ones that come up with it in most cases in which I've seen certifications go. But I think it's correct. We need to at least begin to establish a direction in which these things happen early because it takes a long time when we send something for certification. We're not going to get an answer back in a month or two. It may be a year for some of these cases when it comes back. And that notion of certification, Judge Wilkerson is right. It really should be provided earlier. And we rightly confront you as to why you didn't do it here. Not that it hasn't been done before, but it's something that perhaps we need to begin to direct litigants to do as part of an appeal of this sort. Let me ask one question, at least a question that concerns me to some extent in terms of how the district court approached this waiver of sovereign immunity. And essentially, it's been argued that it is to be construed narrowly, this waiver. I think the appellee will argue that and I will ask the same question. My concern is that when you look at the Maryland Tort Claims Act, and this language is interesting, it says, this subtitle shall be construed broadly to ensure that injured parties shall have remedy. I mean, it seems to me that the district court took the direction of a narrow construction. When the title says broadly, that would be problematic. I totally agree, Your Honor. And I think it doesn't offend the idea of construing narrowly. When you construe something narrowly in the confines of the statute, when the statute says take the words of the statute, in essence, and construe them broadly, then I don't think that that is an opposite of what the 11th Amendment jurisprudence has been in the district court. And if I may just say one thing regarding the certification issue, this is now the second time that we've been at the court of appeals in this case, that this court originally overturned the district court's decision granting the defendant the 11th Amendment immunity. Let me be clear, as far as Judge Wilk is concerned, Judge Wilk has answered my question this morning. I want you to know that. All right, we thank you. And let's hear from Ms. Sheridan, is it? Good morning, Your Honors. May it please the court. The principle that the court has to begin from in any statutory construction is to ascertain the intent of the legislative body. Sheridan, before you get to the merits, do you have any objection to the court certifying this case to the Maryland Court of Appeals? The state has no objection, Your Honor, but we think that this particular case is clearly not covered by. I'm not so sure that I agree, frankly, and we'll talk about that. But whether I'm right or wrong, I'm not sure that I'm the best person to decide the case. Let me follow up and say, if we did certify, what would be the question you think we should certify? The question would be whether the Maryland Court Claims Act waives states' immunity for federal statutory claims. Or it could be a narrower question is under these whistleblower statutes, because the answer to the narrow question is quite clear. Do you think the 11th Amendment forgives us from considering that question? Considering the question of whether the whistleblower statutes. I think the court can construe the state's waiver. If it's clear from the text of the statute, and it's clear there's been no, you know, by the highest court of the state to the contrary. And what's clear from looking at statutes that are in the state here is that, and I'm sorry, I'm getting a little bit of feedback, is that the Maryland General Assembly does not consider the type of claim at issue here to be a tort. The Maryland General Assembly created its own whistleblower statute. Is there such a thing as a statutory tort in Maryland, in the Maryland law? The only one that I can, well, there are statutory torts like claims brought under the Consumer Protection Act. It's not clear whether that's a statutory tort, but it certainly has elements of tort in it, but that's not something that applies to the state. The state is not a producer of consumer products. The Maryland Fair Employment and Practices Act is actually a separate statute that has elements of torts. Well, it has its own waiver. Exactly. So we would be ruling, we would be making that superfluous, essentially, because if the Maryland General Assembly wished to waive something, it set forth a set of statutory ground rules for waiving it. When the Maryland General Assembly creates a new cause of action, statutory cause of action, it expressly states within the statute whether it applies to the state, and it includes within that statute its own separate waiver of sovereign immunity. The basic problem here is that this is a federal cause of action, and it's not even recognized under Maryland law. And for a federal court to say Maryland has waived its sovereign immunity for a cause of action not even recognized under Maryland law, that seems to me to be a pretty bold step. It would seem to me that, you know, we've just invaded, not only we've invaded Maryland's house, this is something for Maryland to decide unless Congress abrogates it, which it hasn't. Right, exactly, exactly. But Congress has not abrogated it. Well, that gets back to my question. If it's something for Maryland to decide, then why not send it to the Maryland court of appeals? The state would have no objection to that, Your Honors, but I do think that in this particular case, it's clear that the General Assembly does not consider these types of... Why is it so clear? I mean, the language simply says it waives sovereign immunity as to tort actions. There's indication in the cases that at least tort actions under Maryland law include state constitutional torts and some state statutory causes of action. So why is it such a leap to say that a tort action under the sovereign might also waive its immunity with respect to federal statutory torts? It's not, by definition, a federal statutory tort. It's not part of the state regime, but that's not, I mean, that's just circular. It doesn't really answer the question as to whether or not the legislature or the courts, when presented with this issue, would agree, particularly given the fact that there's separate language in the statute indicating that the whole reason for this statute is to provide broad remedies for Maryland consumers and citizens. So you've got these two competing interests, one, a requirement that sovereign immunity be narrowly construed, juxtaposed against a legislative purpose of the statute to provide broad remedial remedies, and it seems to me an open question. So, again, I don't see why I need to be the decider in this case. I'd just as soon let the Maryland Court of Appeals figure it out. That's a fair position, Your Honor. I would say that, I mean, the Maryland Court of Appeals has made it quite clear, and look at the statutory structure of the Tort Claims Act, has made it quite clear what the purpose of the act is. And it does have a purpose to compensate victims of tortious conduct by state employees, but it has a twin purpose that is tied to insulating state employees from liability. That's a fair statement, but it's also true. The same Court of Appeals Judge Diaz alludes to is indicating civil torts can be rather broad. It can actually include statutory type torts. And so when we look at it from that perspective, and you mentioned purpose, sometimes I think about, I'm not thinking about the court's purpose of doing something, I think about the legislative purpose of it. Is there anything in the legislative history of the act that indicates it doesn't cover these types of statutory? Well, the thing that shows that it does cover these types of claims, these types of statutory claims, is if you look at the entire statutory structure. So the Tort Claims Act is located in Title 12 of the state government article. The Tort Claims Act is totally within Subtitle 1. And it provides a blanket waiver of immunity for tort actions in the state, and a coextensive qualified immunity for state employees. And so the mechanism is that when a state employee has caused an injury and creating a cause of action. Excuse me, Judge Wilkerson, are you trying to answer the question? I didn't know if you were or not. No, well, I did have one question here, and that is, has the Maryland Court of Appeals extended a waiver of sovereign immunity to a federal cause of action because of the federal statutory cause of action? The waivers that are cited in Espinoza, Espina, I guess, and Lee all involve waivers to state causes of action. So what I'm asking is, is there any case in which the Maryland Court of Appeals or the General Assembly has waived state sovereign immunity for a federal statutory cause of action? Do we have any case like that? No, and certainly not under the Maryland Tort Claims Act. We would be making, we would be opening up new ground here in being the first and charging out ahead of the Maryland Court of Appeals. And we would be the first court holding that there was a waiver of state sovereign immunity for a federal statutory cause of action when the Maryland Court of Appeals has not gone that far. That is correct. Well, it's correct. Wait a minute, wait a minute. I'm sorry. Go ahead. I'm sorry. I just want to say, it is correct that the case of that sort would have gone to the Maryland Court of Appeals. You assume that every case that's filed makes it to the Court of Appeals and ends in an opinion. The fact that you don't have a case does not mean it has not occurred. It just means the Court of Appeals hasn't spoken to it, which goes back to Judge Diaz's point. And I'm very sensitive to what Judge Wilkerson is alluding to here. But sometimes we just get out of the business of the state courts as much as we like to go ahead and forge on with it. This seems like such an important question that could replicate itself. The Court of Appeals in Maryland really ought to answer this for us if we give them an opportunity to do so. It seems a very simple proceeding. That's what certification is about. Why wouldn't we just send this to them? The state would have no objection to that. And that would be the point of the law. I don't know if the Court is interested in bringing this to the Court of Appeals. Do you have anything further? There are a couple of things I want to point out. I want to respond to the idea that somehow the supremacy clause is implicated by the state's argument in this case. Because there's no federal right at issue here. The Congress, in passing the whistleblower statutes, did not give Ms. Williams the right to sue Maryland without Maryland's consent. That's really what this is about. The sovereign is the one who decides when it can be sued. That's the essence of sovereignty. And a federal statute cannot do that. Unless it's a valid abrogation of state sovereign immunity by Congress. But absent that, it's the state who decides. It's the sovereign who decides. Let me ask you. Does the Act really draw any distinction between the state and the federal claims? In other words, is there any meaningful distinction between state and federal statutory claims in Maryland? Well, they're actually processed differently. Does the Act draw that distinction? It doesn't specify. That's the problem. It may well be the case. But where's the federal court drawing such a distinction? The Act doesn't have it. We don't have a case from Maryland on it that deals with it. And it's just before us. It does seem like you wouldn't want to go one or the other. But when you don't see that distinction from the Act itself, it really is a very important question that needs to be answered. It is an important question. But I would say that the main concept here is that the sovereign retains control over the scope of the waiver. And the only way it does that is if it's in the position of defining what is a tort. And in this case, it has not defined Ms. Williams' claims as a tort. She sued for wrongful discharge under Maryland. And that was found to be not a viable claim under state law. She could have pursued an administrative remedy under the Maryland whistleblower statute. But that's all she would have gotten is she could have filed a complaint with the secretary to the Department of Budget and Management. But she couldn't sue in state court based on that statute. She'd only have a right of administrative appeal to the court. Ms. Williams' interpretation of the Tort Claims Act suggests that the General Assembly just left it to whoever, anybody who wants to, to define the scope of what a tort is and to define the scope, therefore, of what the waiver is. And, you know, that's just not, it's just not, there's no support for that in any of the cases that have been cited by my opponent. I mean, you know, the cases fall into three categories. There's the Green v. NBS case, which is not about sovereign immunity at all. It's a case about interpretation of a statutory cap on non-economic damages. And the statute in question applies a cap in any action for damages for personal injury. So that doesn't assist Ms. Williams' case at all. The other case that, type of case that she relies upon are the local government Tort Claims Act cases. That's the Espina case that applies that to constitutional, state constitutional courts or state constitutional claims. And if we look at the way the Court of Appeals interpreted those cases, interpreted the local government Tort Claims Act in those cases, they did it in such a way as to make sure that the purpose of protecting the employees was, the state, the local government employees was effectuated. And it's really, I mean, it's worth pointing out here that state constitutional claims are not common law claims in Maryland. Well, the difficulty in the plaintiff's position, as I see it, is it opens the door so wide to a federal incursion into state sovereignty. And it would be any time that the federal government created a cause of action, or maybe if it would even apply an implied cause of action, even if it were not a valid abrogation. Just the very act of creating a federal cause of action would automatically open the doors of state court and waive state sovereign immunity. And that just seems to me to impose some real damage upon our federal system. I don't know why we can't wait for the Maryland court to do it or for Maryland to do any of these things. But for us to do it strikes me as, I mean, the implications of this are huge. And all the federal government has to do to pull the states into court and to waive the state sovereign immunity is simply to find a private cause of action or imply a private cause of action. And by that, Maryland has lost control over its own court system and over its own treasury and over its own sovereign immunity. That's just not the way our federal system was meant to work. Exactly. And to read it that way leads to absurd results. Absolutely. I must agree, at least in terms of the way Judge Wilkinson characterizes it. But I want to point out that that is a construction that would yield what we normally would give as a narrow construction, construing this waiver of sovereign immunity narrowly. The problem is, is just what Judge Wilkinson describes the legislature can do. And when it enacted this tort law, it had this language. This subtitle shall be construed broadly, which the district court did not do. It explicitly said it wasn't going to do that. And that puts the conundrum back on us. I agree with Judge Wilkinson. I don't want to make a decision to save Maryland. That's why I'm I'm moving in the direction of saying certify this thing to the Supreme Court of Maryland. Let them see it, not us. That's the simple answer seems to be me. Certainly. All right. We thank you. And Mr. Sheridan, I mean, Mr. Kenny, you have some rebuttal time. I'll just take a few few minutes. First, I'm glad to hear that the state does not object to certification. Again, we would not object to certification. I think that will resolve the question. Do you get state doesn't object, but do you now ask things to do? Are you asking us now to certify this to Maryland Court of Appeals? Given given the tenor of the questions today, appellant would request certification to the Maryland Court of Appeals. And in light of the fact that the state brought this case to federal court is now not objecting to that issue. I just want to respond. It is an interesting business. I'm not opposed to certification. What I'm really opposed to is us making a decision that the state has waived its sovereign immunity. I think that would be egregious. But there is a there is a question here about the certification process, which at least avoids the prospect of the federal court charging in and making a major leap in Maryland's waiver of sovereign immunity. And that is that when you don't request it at the district court and you don't request it in your briefing here, and then you all of a sudden catch the drift of certain things which you may or may or may rightly interpret and you may wrongly interpret. But then, you know, you say, oh, yeah, we'll be certification is fine. And I'm just wondering whether just from the standpoint of certification, which is a far less damaging result than having the mayoral than having a federal court charge in with a ruling. But I'm, you know, down the road, just worried about last minute certifications. And it would seem to me best thing to do is get it over there sooner rather than later. Well, I understand that completely, Your Honor. And in all those points make sense. And those are all points that are essentially respecting the sovereignty of Maryland. Maryland is on the other side at no point during this case that they requested certification. If they all those issues that Your Honor just raised, if Maryland did not want this court to resolve this issue, they could have at any point during the two appeals for the district court action made that request. They did not. They're not. Now we would ask the court to certify that issue. You know, and I understand it seems to me your position at this point is either you argue for certification or you're going to take the position that perhaps Judge Wilkerson, he may not be alone, says, well, why don't you go ahead and charge into this and see how that works out? Doesn't look like it's going to work out too well for you on what I can see. So I'm not trying to wreck the argument, but it seems to me there's a clear message coming your direction right now. And I hear it loud, loudly, clearly, and we would ask for certification to the Court of Appeals. The one thing I'll say is this is not the first time that federal courts have come charging into whether or not states have consented to sue. You know, the Supreme Court cases are littered with new exceptions or situations where the federal courts have found state consent. Lapidus, for example, determining whether state action actually constitute consent. Alden Torres recently was that was a constitutional structure case. But again, the Supreme Court is making that decision about this waiver issue under the 11th Amendment. You know, finally, to sum up, I say I understand your Honor's concern. Maryland could be opening itself up to additional positive action by its employees if Maryland employers violate federal law. Maryland does not did not institute a blanket waiver of sovereign immunity. There's a damages. There's a notice provision. There's certain elements regarding punitive damage, regarding different behaviors of the employees that are not covered. So this is not just simply opening the floodgates. This is just providing the employees. I'll ask you, are there any. I didn't see any cases where you had said that the federal court, federal court had said that a state had waived its sovereign immunity, that Maryland had waived its sovereign immunity for a federal cause of action. And it's interesting that I'm sure that they may have had plenty of opportunities to do so, but they haven't done it. We would be the first one. Candidly, I searched and I could not find an example. But that doesn't mean that the state that no state would consent to sue in its own state court for federal costs. Maryland has not. Well, we respectfully argue that the language of the statute includes that type of waiver because Maryland law considers statutory claims to be, in essence, have a tort essence. And in the tort, Maryland tort claims that statute, which covers tort actions, is construed broadly. Finally, the last last point on this is this is not this is not an outlandish argument. The Maryland Declaration of Rights, essentially the Maryland Constitution itself, recognizes that the laws of the United States shall be bound that the state in their own government is bound by those laws in the Constitution and nothing in the legislature of Maryland to the contrary. So when we when we talk about, well, this is going to open the floodgates, the laws of the United States, the laws of the citizens of Maryland and the citizens of Maryland feel like they've been violated by Maryland's violation of federal statutory. I mean, we believe that the Maryland Tort Claims Act up to a certain point allows them to seek redress. No further questions. Thank you. All right, we thank you and we appreciate both of your efforts and we'll go move into our second case.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Albert Diaz